IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-02882-PAB-MJW

ENERGY DRILLING, LLC,

    Plaintiff,

v.

OVERLAND RESOURCES, LLC, and
HEI RESOURCES, INC.,

    Defendants.

_____

**ORDER**
_____

This matter comes before the Court on plaintiff Energy Drilling, LLC's Motion to Dismiss Defendant Overland's Counterclaims. [Docket No. 78]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I. BACKGROUND**[1]

In May 2012, plaintiff and defendant Overland Resources, LLC ("defendant") entered into a Drilling Bid Proposal and Daywork Drilling Contract (the "contract"), which provided that plaintiff would provide services for drilling oil and gas wells in Adams County, Colorado. Docket No. 59 at 2, ¶ 10. The parties used the International Association of Drilling Contractors' ("IADC") form contract for daywork drilling. That

---

[1] The following facts are drawn from plaintiff's Amended Complaint [Docket No. 59] and/or defendant Overland Resources, LLC's Answer and Counter Claim [Docket No. 5]. The allegations in defendant's counterclaims are assumed to be true for purposes of resolving plaintiff's motion to dismiss pursuant to Rule 12(b)(6). *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). The allegations in plaintiff's complaint are included for background purposes, but are not assumed to be true for the purpose of resolving this motion.

contract states in its preamble that work on a "daywork basis" means that the contractor (here, the plaintiff) "shall furnish equipment, labor, and perform services . . . for a specified sum per day under the direction, supervision and control of [defendant]" and that "[e]xcept for such obligations and liabilities specifically assumed by [plaintiff], [defendant] shall be solely responsible and assumes liability for all consequences of operations by both parties while on a Daywork basis, including results and all other risks or liabilities incurred in or incident to such operations." Docket No. 78-2 at 2.[2]

Plaintiff alleges that defendant has refused to pay a number of invoices for labor and materials provided pursuant to the contract. In response, plaintiff brings claims for relief against defendant for breach of contract, oil and gas foreclosure, quantum meruit, and unjust enrichment. *See* Docket No. 59 at 3-5. Through its counterclaims, defendant alleges that plaintiff's services failed to live up to the promises made in the contract in a number of ways, causing defendant "excessive third party costs including, but not limited to: additional cost owed to Cathedral Energy Services . . ., additional cost owed to Zimmerman Equipment Company . . ., additional fuel costs, additional dust control costs, water costs, tank rentals, consulting services, sanitation services, loader rental and trucking services." Docket No. 5 at 6-7, ¶¶ 8-11. Defendant brings counterclaims for breach of contract, negligence, and offset. *See id.* at 7-8. Plaintiff argues that the contract bars defendant's breach and offset claims and that the economic loss rule bars defendant's negligence claim. *See* Docket No. 78.

---

[2]In evaluating a Rule 12(b)(6) motion to dismiss, "the district court may consider documents referred to in the complaint [or counterclaim] if the documents are central to the . . . claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1215.

## II. LEGAL STANDARD

The Court's function on a Rule 12(b)(6)[3] motion for failure to state a claim upon which relief can be granted is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim. Fed. R. Civ. P. 12(b)(6); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In doing so, the Court "must accept the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado*, 493 F.3d at 1215 (quotation and citation omitted). At the same time, however, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (omission marks, internal quotation marks, and citation omitted). The "plausibility" standard requires that relief must plausibly flow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556

---

[3] Plaintiff brings its motion pursuant to Fed. R. Civ. P. 12(b)(6) and Colo. R. Civ. P. 12(b)(5). Colo. R. Civ. P. 12(b)(5) allows litigants to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Plaintiff cites no authority holding that Colo. R. Civ. P. 12(b)(5) is a substantive rule such that a federal court exercising diversity jurisdiction over a contract governed by Colorado law should apply a rule of state procedure and, more importantly, look to Colorado case law to interpret it. The Court, being aware of no such authority, will only apply Fed. R. Civ. P. 12(b)(6).

U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (quotation and citation omitted).

## III. ANALYSIS

### A. Breach of Contract and Offset

Plaintiff argues that the contract bars all of the damages claimed in defendant's first counterclaim (breach of contract) and third counterclaim (right to offset). Plaintiff relies on ¶¶ 14.12 and 14.13 of the contract, which provide:

> *14.12* Consequential Damages; Subject to and without affecting the provisions of this Contract regarding the payment right and obligations of the parties or the risk of loss, release and indemnity rights and obligations of the parties, each party shall at all times be responsible for and hold harmless and indemnify the other party from and against its own special, indirect or consequential damages, and the parties agree that special, indirect or consequential damages shall be deemed to include, without limitation, the following: loss of profit or revenue; costs and expenses resulting from business interruptions; loss of or delay in production; loss of or damage to the leasehold; loss or delay in drilling or operating rights; cost of or loss of use of property, equipment, materials and services, including without limitation those provided by contractors or subcontractors of every tier or by third parties. [Defendant] shall at all times be responsible for and hold harmless and indemnify [plaintiff] and its suppliers, contractors and subcontractors of any tier from and against all claims, demands and causes of action of every kind and character in connection with such special, indirect or consequential damages suffered by [defendant's] co-owners, co-ventures, co-lessees, farmors, farmees, partners and joint owners.

> *14.13* Indemnity Obligation: Except as otherwise expressly limited in this Contract, it is the intent of parties hereto that all releases, indemnity obligations and/or liabilities assumed by such parties under terms of this Contract, including, without limitation, Subparagraphs 4.9 and 6.3(c), Paragraphs 10 and 12, and Subparagraphs 14.1 through 14.12 hereof, be without limit and without regard to the cause or causes thereof, including, but not limited to, pre-existing Conditions, defect or ruin of premises or equipment, strict liability, regulatory or statutory liability, products liability, breach of representation or warranty (express or

4

> implied), breach of duty (whether statutory, contractual or otherwise) any theory of tort, breach of contract, fault, the negligence of any degree or character (regardless of whether such negligence is sole, joint or concurrent, active, passive or gross) of any party or parties, including the party seeking the benefit of the release, indemnity or assumption of liability, or any other theory of legal liability.  The indemnities, and releases and assumptions of liability extended by the parties hereto under the provisions of Subparagraphs 4.9 and 6.3 and Paragraphs 10, 12, and 14 shall inure to the benefit of such parties, their co-venturers, co-lessees, joint owners, their parent, holding and affiliated companies and the officers, directors, stockholders, partners, managers representatives, employees, consultants, agents, servants and insurers of each.  Except as otherwise provided herein, such indemnification and assumptions of liability shall not be deemed to create any rights to indemnification in any person or entity not a party to this Contract, either as a third party beneficiary or by reason of any agreement of indemnity between one of the parties hereto and another person or entity not a party to this Contract.

Docket No. 78-2 at 6, ¶¶ 14.12, 14.13.  Plaintiff argues that this contractual language unambiguously waives defendant's right to file counterclaims for breach of contract and offset based on non-performance of contractual obligations.  In its first counterclaim, defendant seeks "damages," as well as additional costs owed to third parties, additional fuel, dust control, and water costs, and recovery of costs for tank rentals, consulting services, sanitation services, loader rental and trucking services as a result of plaintiff's alleged breach.  Docket No. 5 at 7, ¶ 14.  In its third counterclaim, defendant seeks offset and return of monies that defendant paid to plaintiff as a result of work completed under the contract.  *Id.* at 8, ¶ 25.

Defendant responds that the limitation on consequential damage in the contract remains "subject to the contractual rights and obligations of the parties," Docket No. 79 at 3 (citing ¶ 14.12), and that plaintiff's duty to perform under the contract is thus a limitation that is exempt from the indemnification provision.  *Id.*  Defendant also argues that it was justified in its non-payment of plaintiff and that plaintiff's performance of its

obligations under the contract is a question of fact that should not be decided at the motion to dismiss stage. *Id.* at 6.

Under Colorado law, "[i]nterpretation of a written contract and whether ambiguity exists is a question of law for the court." *Colo. Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786, 788 (Colo. App. 1991), *aff'd*, 854 P.2d 1232 (Colo. 1993). If a contract is determined to be ambiguous, however, "the meaning of its terms is generally an issue of fact to be determined in the same manner as other disputed factual issues." *Id.* at 789.

The Court finds that the contract unambiguously waives defendant's rights to consequential damages, and that defendant's first and third claims for relief therefore fail to state a claim. Defendant's argument rests on a flawed interpretation of ¶ 14.12. Specifically, defendant reads the limitation that the consequential damages waiver is

> "[s]ubject to and without affecting the provisions of this Contract regarding the payment right and obligations of the parties or the risk of loss, release and indemnity rights and obligations of the parties,"

to mean that the waiver is "subject to [the] . . . obligations of the parties." *See* Docket No. 79 at 3. Defendant then argues that the indemnification provision only applies "[e]xcept as otherwise expressly limited in th[e] Contract." *Id.* Defendant's interpretation is not plausible. First, defendant omits key words to reach its interpretation. The consequential damages waiver is not subject to *all* "rights and obligations of the parties," *see* Docket No. 78-2 at 6, ¶ 14.12; it is only subject to the "*payment* right[s] and obligations of the parties," as well as the "risk of loss, release and indemnity rights and obligation of the parties." *Id.* (emphasis added). And the indemnification provision states that the consequential damages waiver under ¶ 14.12

6

is "without limit and without regard to the cause or causes thereof." *Id.* ¶ 14.13. Because defendant's breach of contract and offset theories are not based on an alleged violation of plaintiff's payment rights and obligations, ¶ 14.12's limiting language does not preserve these claims.

Second, defendant's interpretation of ¶ 14.12 would mean that its consequential damages waiver is without effect any time a party breaches any of that party's obligations under the contract. But since consequential damages are only available in the event of a breach, the consequential damages waiver would, thereby, have no meaning under defendant's interpretation. "[A] court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms." *McBride v. Market Street Mortg.*, 381 F. App'x 758, 767 (10th Cir. 2010). Defendant's interpretation is a particularly implausible reading of ¶ 14.12 in light of ¶ 14.13, which provides that the "releases, indemnity obligations, and/or liabilities assumed by [the] parties under . . . Subparagraphs 14.1 through 14.12 hereof, [are] without limit and without regard to the cause or causes thereof, including . . . any theory of tort, [or] breach of contract[.]" Docket No. 78-2 at 6.

Plaintiff asks for dismissal of the entirety of defendant's first counterclaim. But defendant alleges generally that it suffered "damages" in addition to the specified third party costs. Docket No. 5 at 7, ¶ 14. Plaintiff fails to address the Court's authority to dismiss defendant's general claim for "damages" apart from consequential damages. Accordingly, the Court will grant plaintiff's motion to dismiss defendant's first counterclaim to the extent that it seeks consequential damages, but the order will not

affect defendant's counterclaim for "damages." The Court will grant plaintiff's motion to dismiss as to defendant's third counterclaim for offset.

### B.  Negligence

Defendant's second counterclaim is based on negligence and alleges that plaintiff's "standard" duty of care and duty to "make sure labor and materials provided to the project were good and within the industry standards" are duties independent of any contractual duties. Docket No. 5 at 7, ¶¶ 17, 20. Plaintiff moves to dismiss defendant's negligence counterclaim on the ground that it is barred by both the economic loss rule, Docket No. 78 at 7, and by ¶ 14.13 of the contract, which extends the waiver of special, indirect or consequential damages to claims for negligence. *Id.* at 9.

The economic loss rule is a judicially-created rule under which "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (citing *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1259-62 (Colo. 2000)). A duty is considered independent of a contract when two conditions are satisfied: "[f]irst, the duty must arise from a source other than the relevant contract"; and "[s]econd, the duty must not be a duty also imposed by the contract." *Id.* at 962. In other words, "even if the duty would be imposed in the absence of a contract, it is not independent of a contract that memorializes it." *Id.* (quotation and citation omitted).

The Colorado Supreme Court has identified three policy reasons to support the application of the economic loss rule between commercial parties: (1) maintaining the distinction between contract and tort law; (2) enforcing expectancy interest of the

parties so that they can reliably allocate risks and costs during bargaining; and (3) encouraging parties to build cost considerations into contract since they will not be able to recover economic damages in tort. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004).

Colorado law recognizes a "common-law obligation to exercise due care, caution and skill." *Lembke Plumbing and Heating v. Hayutin*, 366 P.2d 673, 675 (Colo. 1961). Defendant claims that plaintiff breached this obligation by "fail[ing] . . . to bring adequate equipment, replacement screens and pipe to properly perform its duties," by "fail[ing] to maintain proper mud weight and viscosity for proper drilling," by "fail[ing] to diagnose problems associated with drilling, including failure to find a hole in the drilling pipe," and "fail[ing] to properly install and maintain BOP equipment," each of which caused damage to defendant in the form of "excessive delays and unrelated and unnecessary costs." Docket No. 79 at 9.

The Court finds that defendant's claims are barred both by the economic loss rule and, in the alternative, by the terms of the contract. Defendant's negligence counterclaim is based on precisely the same conduct as its breach of contract claims. *Compare* Docket No. 5 at 7, ¶ 13 ("Plaintiff breached its obligations under the Contract in the performance of its responsibilities on the Handke #3 and Handke #4 drilling sites as stated herein"); *with id.* at 7, ¶ 18 ("Plaintiff breached that duty and standard of care when it failed to drill the Handke #3 and Handke #4 wells as described herein"). In each case, the phrase "as described herein" refers to the same allegations: the list of deficiencies described in paragraphs 9 and 10 of defendant's counterclaims. *See id.* at 6, ¶¶ 9-10. Where "the duties on which [a party] bases its negligence claim are

identical to the ones on which it relies for its breach of contract claim, the economic loss rule forecloses recovery in tort." *Maisel v. Erickson Constr., Inc.*, No. 11-cv-00555-REB-KLM, 2012 WL 3155834 at *4 (D. Colo. Aug. 3, 2012) (citing *Haynes Trane*, 573 F.3d at 962). Moreover, the contract defines the precise standard of care that defendants claim plaintiff breached. Section 8.1 of the contract obligates plaintiff to "maintain well control equipment in good condition at all times and [to] use all reasonable means to prevent and control fires and blowouts and to protect the hole." Docket No. 78-2 at 4, ¶ 8.1. Thus, "the tort duty allegedly breached here imposed the same duty of care as the parties' contract," and is barred by the economic loss rule. *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 539 (Colo. App. 2011).

Moreover, plaintiff argues, and defendant does not contest, that the contract explicitly disclaims recovery for negligence. Docket No. 78 at 9 (citing Docket No. 78-2 at 6, ¶ 14.13). "In Colorado, agreements attempting to exculpate a party from that party's own negligence have long been disfavored. However, exculpatory agreements are not necessarily void. In determining whether an exculpatory agreement is valid, Colorado courts consider four factors: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language." *Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 872 (10th Cir. 2013) (citations, quotations, and alteration marks omitted). Defendant does not argue that the contract was not fairly entered into or that the Court should invalidate the exculpatory clause due to public policy concerns or the nature of the work performed. Thus, the

Court looks to the language of the contract and finds that ¶ 14.13 unambiguously provides that the waiver of consequential, special, or indirect damages in ¶ 14.12 is intended to apply to "any theory of tort," including "the negligence of any degree or character (regardless of whether such negligence is sole, joint or concurrent, active, passive, or gross) of any party or parties[.]" Docket No. 78-2 at 6, ¶ 14.13. "Because the [contract] contains clear and unambiguous language demonstrating [defendant] intended to release any negligence claims [it] might have against [plaintiff], it is valid and enforceable[.]" *Squires*, 715 F.3d at 874; *see also ANR Prod. Co. v. Westburne Drilling, Inc.*, 581 F. Supp. 542, 547-48 (D. Colo. 1984) (finding that the "clear and unambiguous" exculpatory clause in an earlier version of the IADC form daywork contract was valid and enforceable where there was no indication that the operator "unknowingly or involuntarily agreed" to it).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff Energy Drilling, LLC's Motion to Dismiss Defendant Overland's Counterclaims [Docket No. 78] is **GRANTED** in part. It is further

**ORDERED** that defendant's second and third counterclaims are dismissed with prejudice. It is further

**ORDERED** that defendant's first counterclaim is dismissed with prejudice to the extent that it seeks recovery of consequential damages.

12

DATED March 17, 2015.

                                    BY THE COURT:

                                    s/Philip A. Brimmer
                                    PHILIP A. BRIMMER
                                    United States District Judge